UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYODELE PATTERSON,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　Respondent.[1] | Case No. 21-cv-06601-VC  (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Ayodele Patterson, an inmate at the California State Prison, Solano, files this petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction and sentence imposed by the Alameda County Superior Court. Patterson asserts three claims: (1) the jury's verdict was coerced by the trial court; (2) prosecutorial misconduct; and (3) the imposition of fees and fines without assessing his ability to pay violated his due process rights. The respondent has filed an answer and a memorandum of points and authorities in support of the answer; Patterson has not filed a traverse. For the following reasons, the petition is denied.

## PROCEDURAL BACKGROUND

On September 1, 2016, a jury found Patterson guilty of the first degree murder of 80-year old Carolyn June Pavon while he was burglarizing her home. 2 Clerk's Transcript ("CT") 406-07; ECF No. 18-2 at 109-10. The jury found true the allegation that Patterson personally used a

---

[1] In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Gigi Matteson as Respondent because she is Patterson's current custodian.

firearm.  *Id.*  The jury found not true the allegations that Patterson personally discharged a firearm and caused great bodily injury to the victim.  *Id.*  On November 16, 2018, the trial court sentenced Patterson to life without the possibility of parole.  2 CT 520; ECF No. 18-2 at 223.

On September 8, 2020, the California Court of Appeal affirmed the judgment.  *See People v. Patterson*, 2020 WL 5361882 (Cal. Ct. App. Sept. 8, 2020) (unpublished).  On November 10, 2020, the California Supreme Court summarily denied review.  Ex. 11; ECF No. 18-18 at 2.

## STANDARD OF REVIEW

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  This is a highly deferential standard for evaluating state court rulings: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d*). Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  In this case, the California Court of Appeal is the highest court to issue a reasoned decision on Patterson's coerced verdict claim.

## DISCUSSION

### I. Coerced Verdict

Patterson argues the trial court's "refusal to accept the jury's repeated claims of impasse amounted to a violation of his Sixth and Fourteenth Amendment rights to a fair jury trial."[2]

**A. Relevant Facts**

Two and a half days into deliberations, the jury sent the trial court the following note: "We are at a stalemate. Can the Court please advise on further steps?" ECF No. 18-9 at 116. The defense asked for a mistrial. *Id.* at 116, 117. The trial court responded that the jurors had deliberated for only two and a half days, and most of that time they were waiting for answers to their questions or listening to a re-read. *Id.* at 116. The trial court noted that juror number 8 was promised that she would be released after deliberating that day because she had a preplanned vacation. *Id.* at 116-17. The court decided to release juror number 8, put in a substitute and give the jury the standard instructions to begin deliberations anew after putting in a substitute. *Id.* at 117, 119. After several more days of deliberations, questions from the jury and re-reads, the new jury sent a note stating, "We are at another impasse. Is there anything the Court can do to assist?" *Id.* at 124. Again, the defense asked for a mistrial, which the court denied. *Id.* at 125. When the jury was brought in, the judge asked the foreperson the following, "I'm going to ask you a question. There is only going to be a one-word answer, yes or no. And that question is, has the jury unanimously agreed on anything up to this point?" *Id.* The foreperson answered, "No." *Id.* The judge then stated:

> You have had the case now as a jury, as a group, since Tuesday. There has been some reread Tuesday, Wednesday was somewhat of a shortened day, some reread that day, another day. This case, as most of the cases I try, certainly is serious. All cases have a certain interconnectedness in the evidence that -- excuse me -- this case perhaps more than most. I would ask all of you to still keep an open mind, continue to discuss and deliberate with the other members of the jury, looking at all the evidence and how it fits. If there is anything I can do in terms of further questions answered,

---

[2] In his state petition, Patterson alleged another instance of jury coercion. Because he does not allege that claim in his federal petition, the court does not address it.

3

>     reread, let me know. Other than this suggestion at this point, I
>     cannot think of anything else I can do to assist. Thank you all very
>     much. You can continue your deliberations.

*Id.* at 125-26.

Several days later, the jury reached a verdict of guilty. *Id.* at 144.

### B. Federal Standard

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). A jury instruction is unconstitutionally coercive if it denies the defendant the due process right to a trial by a fair and impartial jury. *DeWeaver v. Runnels*, 556 F.3d 995, 1007 (9th Cir. 2009). The use of a supplemental jury charge given by the court to encourage a jury to reach a verdict after the jury has been unable to agree for some period of deliberation has long been sanctioned. *Lowenfield*, 484 U.S. at 237 (citing *Allen v. United States*, 164 U.S. 492, 501-02 (1896)). A claim of jury coercion requires a reviewing court to "consider the supplemental charge given by the trial court in its context and under all the circumstances." *Id.*

In a federal habeas proceeding, a claim of jury coercion requires the habeas court to ask: (1) whether the state court looked at the totality of the circumstances in determining if the instruction was coercive; and (2) whether that court's determination on the coercion question was reasonable. *Parker v. Small*, 665 F.3d 1143, 1148 (9th Cir. 2011); *DeWeaver*, 556 F.3d at 1007 (supplemental jury instruction containing a hypothetical mildly slanted in favor of the prosecution was not coercive); *Rodriguez v. Marshall*, 125 F.3d 739, 750 (9th Cir. 1997) (no coercion where judge advised jurors not to surrender their sincerely held beliefs and (1) made no comment on numerical split, (2) did not know whether the majority favored conviction or acquittal, and (3) did not know the identity of the holdouts; that the jury deliberated for four more days and called for a reading of testimony indicated that there had been no coercion).

### C. Analysis

In denying this claim, the California Court of Appeal considered that: (1) the jury sent notes of an impasse after it had deliberated a relatively short time considering the seriousness of

the case; and (2) in response, the trial court asked the jury to keep an open mind, to deliberate further and offered assistance by answering any further questions. *Patterson*, 2020 WL 5361882, *5. The Court of Appeal concluded that, because the trial court did not ask about the numerical division of the jury, the trial court's request that the jury deliberate further was not an attempt to coerce any holdout jurors. *Id.*

Furthermore, after receiving this supplemental instruction, the jury deliberated several days more before reaching its verdict, indicating that the trial court's instruction was not coercive. *See Rodriguez,* 125 F.3d at 751 (four day lapse between court's admonition and jury's return of verdict indicated no coercion). Indeed, the jury in this case experienced far less pressure than in *Rodriguez,* where the Ninth Circuit found no coercion where the jury declared itself deadlocked on four occasions, and each time the court ordered the jury to continue deliberations. *Rodriguez*, 125 F.3d at 748-49.

The Court of Appeal's rejection of this claim was not contrary to or an unreasonable application of Supreme Court authority because it examined the trial court's supplemental instruction to the jury considering the totality of the circumstances and made a reasonable determination that the instruction was not coercive. *See Lowenfield*, 484 U.S. at 237.

## II. Prosecutorial Misconduct

Patterson claims the prosecutor committed misconduct by appealing to the passions of the jury by presenting the victim in a sympathetic light and by referring to the charged homicide as a "murder."

### A. Federal Authority

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d

1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided by "examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995).

A key factor in determining whether misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court generally presumes the jury has disregarded inadmissible evidence or improper argument. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Darden*, 477 U.S. at 182.

### B. Analysis

#### 1. Appealing to Passions of the Jury

When a state court does not reach the merits of a claim, the federal court must conduct a de novo review. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Taylor v. Beard*, 811 F.3d 326, 331 n.3 (9th Cir. 2016) (en banc) (conducting de novo review where state courts rejected claim on procedural grounds and did not consider merits). The Court of Appeal determined that this claim was forfeited because defense counsel failed to object. Based on this ruling, the respondent argues this court cannot reach the merits of the claim because it has been procedurally defaulted. But even on de novo review, the claim easily fails on the merits.

Patterson objects to the prosecutor's eliciting testimony from Pavon's daughters that presented Pavon in a sympathetic light and objects to the prosecutor's repeating that sympathetic testimony in her closing argument.

The prosecutor asked one daughter about Pavon's mood, her daily routine, how she cared for her dog, and what her mental state was. In response, the daughter provided her mother's daily routine and explained that, even though her mother was 80 years old, she was able to walk and drive a car, take care of her dog, was mentally sharp, liked to read romance novels, took care of her own finances and was looking forward to a family trip to Disneyland. ECF No. 18-4 at 26-30. The prosecutor also asked the daughter about her father, Pavon's husband. ECF No. 18-4 at 32. The daughter replied that her father had worked as a firefighter for the City of Oakland

and he passed away in 2002. *Id.* The prosecutor asked similar questions of Pavon's second daughter, who was the person who discovered Pavon's body. ECF 18-4 at 42-45. In her closing argument, the prosecutor reiterated this testimony. See ECF 18-9 at 7-8.

The trial court very likely should have restricted the prosecutor from eliciting so much of this testimony and arguing it at closing. But it did not rise to the level of infecting the trial with unfairness. The prosecutor's comments and questions did not manipulate or misstate the evidence or implicate any other of Patterson's constitutional rights. *Compare Darden*, 477 U.S. at 181-82. Furthermore, the trial court instructed the jury at the beginning of the trial and at the close of evidence, that it must base its decisions on the facts and law and not on "sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." ECF No. 18-2 at 111 (instructions after close of evidence); ECF No. 18-4 at 14 (beginning instructions). The court also instructed that "statements made by the attorneys during the trial are not evidence." ECF No. 18-4 at 14. *See Tan*, 413 F.3d at 1116-18 (instructions may eliminate risk that prosecutor's statement deprived defendant of due process).

In her closing, the prosecutor's reiteration of the daughters' challenged testimony was relatively short. ECF No. 18-9 at 7-8. It took up two pages at the beginning of a 23-page closing argument. ECF No.18-9 at 6-29. The prosecutor did not mention these statements again in her closing rebuttal argument. ECF No. 18-9 at 79-99. In defense counsel's closing argument, he acknowledged that Pavon was a sympathetic victim and even repeated some of the prosecutor's statements about her, *see* ECF No. 18-9 at 36-37, but he argued that this was not relevant to what the jury had to decide, which was whether Patterson was the shooter, *see* ECF No. 18-9 at 37. The defense argument served to neutralize any sympathy the prosecutor may have elicited and re-focused the jury on the relevant question and the relevant evidence.

On de novo review, looking at the entire proceedings, the sympathetic evidence elicited by the prosecutor and its repetition at the beginning of the prosecutor's closing remarks did not infect the trial with unfairness such that Patterson's conviction was a denial of due process.

### 2. Using the term "murder"

Patterson argues that the prosecutor's frequent use of the term "murder" to describe the homicide constituted prosecutorial misconduct. The state court found this claim was also forfeited because defense counsel never objected. *Patterson*, 2020 WL 5361882 at *7.

Even if not defaulted, this claim fails on the merits. Patterson did not present any evidence or defense that Pavon's killing was not a murder. Defense counsel acknowledged in his closing argument that the killing was a murder, but argued that the evidence showed Patterson did not commit the murder. *See* ECF No. 18-9 at 36-37. The jury was instructed to follow the law as defined in the court's instructions and, if anything the attorneys said conflicted with the instructions, the jury was to follow the instructions. *See* ECF No. 18-2 at 111, 113.

On de novo review, looking at the totality of the circumstances of this trial, the prosecutor's use of the term, "murder," to describe Pavon's killing did not so infect the trial with unfairness such that Patterson's conviction was a denial of due process.

### III. Imposition of Fees and Fines

Patterson claims his due process rights were violated by the trial court's imposition of fines, fees and assessments at his sentencing without consideration of his ability to pay. There is no federal habeas jurisdiction over this claim.

Under 28 U.S.C. § 2254 a habeas petition may be entertained "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States," which requires "a nexus between the petitioner's claim and the unlawful nature of the custody." *Bailey v. Hill*, 599 F.3d 976, 979-80 (9th Cir. 2010). For this requirement to be satisfied, success on the claim must result in a change in the restraint on the petitioner's liberty. *Id.* at 981. A challenge to a restitution order does not meet this requirement because success might cause the restitution to be set aside but would not affect any restraint on the petitioner's liberty. *Id.* at 981.

Likewise, success on Patterson's fines, fees and assessments claim might cause these monetary obligations to be set aside, but would not affect the restraint on Patterson's liberty. *See also Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998) (citing cases holding

imposition of fines does not meet "in custody" requirement of 28 U.S.C. § 2254).

## CONCLUSION

Patterson's petition for a writ of habeas corpus is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of the respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 30, 2022

VINCE CHHABRIA
United States District Judge